UNITED STATES DISTRICT COURT FOR THE
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

| | |
|---|---|
| **NARCE GIRON PENA AND KEVIN VALLES GIRON** § § § § *Plaintiffs* § § v. § § **GENERAL MOTORS, LLC** § § § § § § *Defendant* § | **CIVIL ACTION NO:** § § § § § § § § § § § § § § § **JURY TRIAL REQUESTED** |

# COMPLAINT

## I. Parties

1. Plaintiffs, NARCE GIRON PENA and KEVIN VALLES GIRON, are individuals that now and have been at all times citizens of the state of Colorado.

2. Defendant, GENERAL MOTORS, LLC, hereinafter "GENERAL MOTORS," is a Delaware limited liability company with its principal place of business in Michigan and is a citizen of both the State of Delaware and the State of Michigan. GENERAL MOTORS and is a warrantor of a vehicle that Plaintiff purchased and is a merchant in goods of the kind involved in this case. General Motors LLC is 100% owned by General Motors Holdings LLC. General Motors Holdings LLC is a citizen of both the State of Delaware and the State of Michigan. General Motors Holdings LLC is 100% owned by General Motors Company. General Motors Company is a publicly traded company. No publicly held entity owns 10% or more of the stock of General Motors Company. General Motors Company was incorporated in Delaware with its principal place of business in Michigan and is a citizen of both the State of Delaware and the State of Michigan.

GMC's agent for service of process is Corporation Service Company, 1900 W. Littleton Blvd., Littleton, CO 80120.

## II. Jurisdiction

3.  This Court has federal question jurisdiction over the lawsuit under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d); and 28 USC § 1331 in that the disputes involve predominant issues of federal law, and the amount of controversy exceeds $50,000.00.

## III. Venue

4.  Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendant is subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

## IV. Conditions Precedent

5.  All conditions precedents have been performed or have occurred.

## V. Facts

### A. The Transaction

6.  On December 11, 2020, Plaintiffs purchased a new 2021 CHEVROLET SILVERADO 1500 bearing VIN: 3GCPYFED3MG172174, hereinafter "Subject Vehicle," from LEN LYALL CHEVROLET.

The Subject Vehicle was purchased primarily for Plaintiffs' personal use. The purchase price was $51,020. Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law. See **Hughes v. Segal Enterprises, Inc.**, 627 F. Supp. 1231, 1238 (W.D. Ark. 1986);

<u>**Chariton Vet Supply, Inc. v. Moberly Motors Co.**</u>, 2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).

### B. Implied Warranties

7. As a result of the sale of the Subject Vehicle by Defendant to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the Subject Vehicle would pass without objection in the trade under the contract description; and that the Subject Vehicle was fit for the ordinary purpose for which such Subject Vehicle are purchased.

8. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant. Specifically, the Defendant impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

9. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the Subject Vehicle occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the Subject Vehicle had, in fact, repaired the defects.

10. Plaintiffs' purchase of the Subject Vehicle was accompanied by express warranties offered by the Defendant and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase of the Subject Vehicle.

11. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts

and labor, were to be made at no charge. Additional warranties were set forth in the Defendant's warranty booklet and owner's manual.

### D. Actionable Conduct

12. In fact, when delivered, the Subject Vehicle was defective in materials and workmanship, with such defects being discovered within the warranty periods. Many defective conditions have occurred since purchase, including, but not limited to, the following**:**

    **A.**    **VEHICLE SHAKING;**

    **B.**    **CHECK ENGINE LIGHT ON;**

    **C.**    **REDUCED ACCELERATION DEFECTS, NON-CONFORMITIES, AND CONDITIONS.**

    **D.**    **VEHICLE MISFIRES.**

    **E.**    **SUBJECT VEHICLES IN SHOP 4 TIMES TOTALING 50 DAYS.**

    **F.**    **ANY AND ALL DEFECTS, NON-CONFORMITIES AND CONDITIONS LISTED ON ANY AND ALL REPAIR ORDERS.**

13. Since purchase, Plaintiffs have returned the Subject Vehicle to the Defendant and its authorized warranty service dealers for repairs on numerous occasions. Despite this prolonged period during which the Defendant was given the opportunity to repair the Subject Vehicle the more significant and dangerous conditions were not repaired. The Defendant failed to repair the Subject Vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the Subject Vehicle continues to this day to exhibit some or all of the non-conformities described herein.

14. The defects experienced by Plaintiffs with the Subject Vehicle substantially impaired its use, value and safety.

15. Plaintiffs directly notified the Defendant of the defective conditions of the Subject Vehicle.

## VI. Causes of Action

### COUNT 1: VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

16. Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

17. Plaintiffs are a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

18. Defendant is a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

19. The Subject Vehicle is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

20. The express warranties more fully described hereinabove pertaining to the Subject Vehicle is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

21. The actions of Defendant in failing to tender the Subject Vehicle to Plaintiffs free of defects and refusing to repair or replace the Subject Vehicle tendered to Plaintiffs constitute a breach of the written and implied warranties covering the Subject Vehicle and hence a violation of the Magnuson-Moss Warranty Act.

22. Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendant as herein alleged.

1   23.     As a direct and proximate result of the acts and omissions of Defendant and each of them as set forth hereinabove, Plaintiffs have been damaged hereinabove in an amount in excess of $100,000 according to proof at trial.

24.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 2: BREACH OF EXPRESS WARRANTIES

25.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

26.     The Defendant's advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that the Subject Vehicle was free of defects in materials and work quality at the time of delivery.

27.     As alleged above, the Defendant breached its warranties by offering for sale and selling as safe to Plaintiffs a Subject Vehicle that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

28.     In breach of the foregoing warranties, the Defendant has failed to correct said defects.

29.     The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the Subject

Vehicle; costs of repairs; expenses associated with returning the Subject Vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

### COUNT 3: BREACH OF IMPLIED WARRANTIES

30. Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

31. The Defendant impliedly warranted that the Subject Vehicle which it designed, manufactured, and sold, was merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

32. Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendant are unreasonable and unconscionable and void under the principles of estoppel, because Defendant knew the defects existed and might not be discovered, if at all, until the Subject Vehicle had been driven for a period longer than the period of the written warranty, and Defendant willfully withheld information about the defects from Plaintiffs.

33. Because of the defects, the Subject Vehicle is unsafe and unfit for use and has caused economic loss to the Plaintiffs. Therefore, the Defendant breached the implied warranty of merchantability.

34. The damages Plaintiffs have suffered are a direct and proximate result of Defendant's actions in this matter include, but are not limited to, diminution in value of the Subject Vehicle; costs of repairs; expenses associated with returning the Subject Vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## VII. Economic and Actual Damages

35. Plaintiffs sustained the following economic and actual damage as a result of the actions and/or omissions of Defendant described herein above:

    a. Out of pocket expenses, including but not limited to the money paid towards the note securing the Subject Vehicle;

    b. Loss of use;

    c. Loss of the "benefit of the bargain";

    d. Diminished or reduced market value; and

    e. Costs of repairs.

## VIII. Request for Rescission

36. Plaintiffs seek a damages remedy as an alternative to the remedy of rescission which is requested in the following paragraph.

37. Plaintiffs revoke their acceptance of the subject vehicle for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of the Defendant that the defects in the subject vehicle would be repaired. Accordingly, Plaintiffs seek a cancellation of the automobile purchase transaction and an order of the court restoring to them the money obtained by Defendantas a result of the false representations and breaches of warranty set forth above. Plaintiffs also seek cancellation of the debt and now offers to return the automobile to Defendant. In this connection, Plaintiffs will provide Defendant a credit for the impaired use of the subject vehicle, for the time that Plaintiffs were able to use it.

## IX. Attorney Fees and Costs

38.     Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended. As a proximate result of the misconduct of Defendant as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## X. Prayer

39.     For these reasons, Plaintiffs pray for judgment against the Defendant for the following:

    a.     For general, special and actual damages according to proof at trial;

    b.     Rescinding the sale of the Subject Vehicle and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.     For incidental and consequential damages according to proof at trial;

    d.     Out of pocket damages for expenditures related to any cost of repairs, deductibles, and towing charges.

    e.     Any diminution in value of the Subject Vehicle attributable to the defects;

    f.     Past and future economic losses;

    g.     Prejudgment and post-judgment interest;

    h.     Damages for loss of use of Subject Vehicle;

    i.     Civil Penalties and/or Punitive damages;

    j.    Damages for mental anguish;

    k.    Attorney fees;

    l.    Costs of suit, expert fees and litigation expenses; and

    m.    All other relief this Honorable Court deems appropriate.

**XI. Demand for Jury Trial**

40.    Plaintiffs hereby demand a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*
Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
111 Park West Drive
Scott, LA 70583
rick@rickdalton.law
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS